# In re Appropriation for Highway Purposes of Land of Moser et al.

(No. 64758—Decided March 13, 1969.)

Common Pleas Court of Clark County.

*Mr. Thomas T. Taggart,* for defendants Raymond N. and Mary Lou Moser.

*Mr. Gerald E. Schmenk,* trustee for suit for defendant Raymond K. Moser.

GOLDMAN, J.    This matter is before the court on a motion by defendants Raymond N. Moser and Mary Lou Moser, husband and wife, for an order directing the Clerk of the Common Pleas Court for this county to distribute to them the total deposit made by the director of highways for real estate appropriated in this case, on the answer of the trustee for Raymond K. Moser, heretofore appointed by this court, which denies that the above named Raymond N. and Mary Lou Moser are entitled to the deposit, and on a motion for summary judgment filed by said trustee.

Stipulations of facts, affidavits, exhibits and briefs were filed in this cause, and by agreement of the parties the issues to be determined were then submitted to this court for decision.

In the interest of brevity, Raymond K. Moser will be hereinafter referred to in this decision as "the father" and Raymond N. Moser as "the son."

The sequence of events bearing upon the issues before this court is as follows:

On January 26, 1968, the state of Ohio began proceedings in this court to appropriate property which the state required for the construction and improvement of State Route 72, in Clark County, Ohio, which belonged to the Mosers, and at the same time deposited with the clerk of courts the sum of $40,000 which the state had previously determined to be the fair and reasonable market value of the property involved.

In those proceedings, the father, as an "incompetent," together with the son and his wife, were named as among those having an interest in the property.

On March 11, 1968, the son and his wife filed a motion (which is the one now before this court for determination) to distribute the deposit to them, on the grounds that they were the owners in fee of said property by virtue of a deed executed and delivered by the father to them on September 12, 1967.

On March 25, 1968, on the application and request of the Director of Highways and pursuant to Section 2307.13, Revised Code (which sets forth the manner in which an insane person is sued), this court appointed a trustee for the father for the purpose of defending his interest in the appropriation proceeding.

On April 26, 1968, the trustee filed his answer alleging that the father was an inmate of the Lima State Hospital for the criminally insane, that the father lacked the mental capacity to execute and deliver a deed to his property on September 12, 1967, denied that an effective transfer of said property resulted from such conveyance, and sub-

mitted the interests of the father to the care and protection of this court.

No appeal having been taken within the time allowed by law, by either the trustee or the son, from the determination by the state of the value of the property, this court, on May 1, 1968, ordered the clerk of courts to pay the $40,000 on deposit to those persons named as parties to the proceedings *as their interests may appear.* (All emphasing in this decision is by the court.)

Thereafter, on June 4, 1968, this court directed the clerk of courts to deposit the money he held on account of the defendants in special accounts in several financial institutions in the city of Springfield until further order of this court.

On November 6, 1968, the trustee filed his motion for summary judgment on behalf of the father, directed to the motion of the son and his wife heretofore filed asserting their right to the money on deposit, following which further filings of affidavits and exhibits were made as above noted and the issues submitted to this court for decision.

Before dealing with the issues before this court, attention must be directed to case number 12327, *State* v. *Raymond K. Moser,* also filed and still pending in this court, the full record of which by stipulation was made part of the record in this case.

The record in the criminal case and the record in this case reveal that on January 30, 1960, an affidavit was filed in the Municipal Court of Springfield, Ohio, charging Raymond K. Moser, the father, with the first degree murder of his wife. Thereafter a grand jury of Clark County returned an indictment charging him with murder in the first degree, and to this charge, on February 15, 1960, the father entered a plea of not guilty and not guilty by reason of insanity. His "present insanity" was further suggested at that time, and this court, pursuant to said pleas and the suggestion of present insanity, on February 16, 1960, ordered the father committed to Lima State Hospital, to remain there for thirty days in order that a determina-

tion might be made as to whether the father was competent to assist his counsel in the preparation of his own defense. This commitment, and subsequent proceedings relating to the question of the father's insanity, were made pursuant to Sections 2945.37, 2945.38 and 2945.40, Revised Code, which are part of the Ohio Criminal Code.

Thereafter, on March 24, 1960, being more than thirty days following said commitment, the father was returned to this court and a hearing was held on the single issue of the father's then present sanity. Testimony was taken, all of which was to the effect that the father was insane, and at the conclusion of said hearing this court found the father to be "presently insane" and, pursuant to Section 2945.38, Revised Code, ordered him returned to Lima State Hospital, there to remain until, in the language of that statute, he "be restored to reason," and further ordered that upon his being restored to reason he shall be proceeded against as provided by law.

The father was thereupon returned to Lima State Hospital, where he has remained ever since, in the care and custody of said hospital and the superintendent thereof.

The record before this court further discloses that on February 9, 1960, approximately two weeks *after* the affidavit charging the father with murder in the first degree was filed in the Municipal Court of Springfield, Ohio, an application for the appointment of a guardian for the father was filed by the son in the Probate Court of Clark County, Ohio, being case number 40516 in that court, and on February 15, the same date on which the father appeared and entered his pleas to the indictment in this court, the son was appointed as such guardian and was authorized to continue to operate, pursuant to the orders of the Probate Court, the business known as Acme Spring and Wheel Service, which business was the property of the father.

Thereafter, on August 4, 1967, more than seven years later, and while the father was still an inmate of Lima State Hospital awaiting his "restoration to sanity," an application was filed in the Probate Court by counsel for

the father, requesting that the guardianship be terminated, the application reciting that the need for the guardianship no longer existed, and asking that the management of the father's property be returned to him.

(It may be noted that the only "management" subsequently apparently exercised by the father was to execute a deed to his son for the real estate and transfer the business to his son.)

The Probate Court of Clark County, on August 15, 1967, conducted a hearing on the application to terminate the guardianship, and on September 12, 1967, granted the application and ordered the guardianship terminated. The deed for the real estate involved in the appropriation suit, executed by the father and delivered by him to the son, was filed for record in the Clark County Recorder's Office on October 6, 1967, said deed, however, bearing the date September 12, 1967, as the date it was executed and acknowledged before a notary public for this county, that being the very same date on which the order terminating the guardianship was filed.

Thereafter, approximately four months later, the appropriation suit was filed in this court and the proceedings above noted were instituted.

The son asserts he is entitled to the money realized from the appropriation suit because he claims he is the owner of record of said property as evidenced by the deed. The trustee appointed by this court to protect the interests of the father, on the other hand, contends that the conveyance by the father, while still incarcerated in a state institution for the criminally insane as a result of a determination by this court that he was not then sane, is ineffective and void because of lack of mental competency on the part of the father to make such conveyance. The son, in response, contends that the action of the Probate Court terminating the guardianship had the effect of restoring the father to reason and thus established his competence, and that the conveyance of his property to the son therefore was valid.

To support the son's contention, reliance is placed on the following language which is included in the order of the Probate Court terminating the guardianship, to wit: The court * * * finds * * * "said ward Raymond K. Moser has sufficiently recovered normal mental conditions to understand fully facts that have been presented and has recovered sufficient normal mental conditions to be able to care for himself and his property, *and that the necessity for this guardianship no longer exists.*"

The son claims that this order and finding by the Probate Court, an appealable order but not appealed from, is binding on this court in the instant proceedings, and that this court may not now question the mental capacity of the father to convey by deed his property to the son, and to do so would be a collateral attack upon the judgment of a court of competent jurisdiction, which the son argues no court can properly make.

It becomes necessary, therefore, to consider what effect, if any, the order of the Probate Court terminating the guardianship has upon the issues in this case.

Section 2101.24, Revised Code, part of the Probate Code of Ohio, is titled "Jurisdiction of Probate Court," and therein is set forth the authority and jurisdiction of the Probate Court. An examination of that section reveals that division (D) grants the Probate Court authority to appoint and remove guardians, and division (F) grants that court the authority to make inquests respecting insane persons subject to guardianship.

However, the following significant language also appears in that section, to wit: "*Such jurisdiction shall be exclusive in the probate court unless otherwise provided by law.*" See also 14 Ohio Jurisprudence 2d, page 600.

Has a determination of the father's competence or insanity been otherwise provided for by law?

The answer is that it has, and the answer may be found in those sections of the Ohio Criminal Code above referred to, to wit, Sections 2945.37, 2945.38 and 2945.40, Revised Code, among others.

It was pursuant to the provisions of these sections that this court found the father ''insane'' and committed him to Lima State Hospital until ''restored to reason,'' at which time he was to be proceeded against according to law. This court has not been notified by that institution that the father has been restored to sanity, nor has the hospital or the father or the son or anyone in his behalf requested a hearing in this court to determine and pass on the issue of his insanity as of this date. In fact, as will later appear, the authorities at Lima State Hospital consider him now and at all times since his incarceration to be insane.

What jurisdiction, therefore, remains in the Probate Court to determine that the father has been restored to sanity, and to what extent is such a finding, if indeed one was intended or in law made, binding upon this court?

The Probate Code and the criminal statutes above noted clearly provide, and the courts have uniformly held, that the Probate Court, under facts and circumstances such as exist in this case, lacks exclusive jurisdiction to make an order binding upon this court touching upon a determination of the competence or sanity of the father.

To cite a few authorities touching upon this issue and in support of this court's finding, we may consider the following:

''Section 13614, General Code, providing that a person under indictment who is found to be insane shall be committed to the Lima state hospital 'until restored to reason' and that then the prosecuting attorney shall proceed with the trial of such person, *does not contemplate the return of the prisoner to the probate court for further examination and adjudication. After commitment to the state hospital, no continuing exclusive jurisdiction remains in the probate court.*'' Fenney v. State, 16 Ohio App. 517, paragraph two of the syllabus.

Also:

''The provisions of Section 7240, Revised Statutes, are mandatory; and the mode therein prescribed for a trial of the question of the present insanity of a person under

indictment is *peremptory and exclusive.*" *State* v. *Roselot,* 69 Ohio St. 91, paragraph one of the syllabus.

Also:

"1. Under the provisions of Section 2945.40, Revised Code, in any case in which insanity is set up as a defense the court may commit the defendant to a local hospital for the mentally ill or the Lima State Hospital, where the defendant shall remain under observation for such time as the court directs, not exceeding one month.

"2. *This jurisdiction of the Court of Common Pleas is not affected by a previous consideration of the defendant's sanity in a proceeding in the Court of Probate.*" *In re Fisher,* 167 Ohio St. 296.

See also 142 A. L. R. 1008, citing *State* v. *Hagerty,* 152 Minn. 502, 189 N. W. 411, to the same effect.

Not one of the decisions cited by the son touching upon the binding or conclusive effect of a ruling by the Probate Court in these matters involves or deals with a person who at the same time was committed by the Court of Common Pleas as insane pursuant to the criminal statutes above referred to.

By so ruling this court does not suggest that all of the proceedings in the Probate Court were without validity. Under Section 2111.01, Revised Code, in the chapter dealing with "Guardians," an "incompetent" is defined not only as one who is mentally deficient or a lunatic, but for the purposes of guardianship *any person who is confined to a penal institution* within this state is considered an "incompetent" justifying the appointment of a guardian. Furthermore, Section 2111.47, Revised Code, provides that such guardianship may be terminated upon satisfactory proof *that the necessity for the guardianship no longer exists.*

The letters of guardianship described the father as an "incompetent," which indeed he was by reason of his confinement, and the record further indicates that there was ample reason and cause for the appointment of the guardian since the father at the time was charged with the com-

mission of a felony and confined, and thus he was indeed an incompetent under the provisions of the above statute, and further, he had a business and property that required attention and management.

The Probate Court also very properly found that the necessity for the guardianship no longer existed, since as a result of its ruling there was no property or business to manage, as it now appears the son operates the business in his own name. Thus the guardianship was properly terminated, with which finding no one involved in this case, including this court, disputes.

"The sole issue before the court in a proceeding to terminate the guardianship of an incompetent is whether the ward has presented 'satisfactory proof that the necessity for the guardianship no longer exists,' and, where such 'satisfactory proof" is presented, the court is under a mandatory duty to terminate the guardianship." *In re Breece,* 173 Ohio St. 542, paragraph two of the syllabus.

Thus, the statutes and authorities cited clearly indicate that, both in the matter of the appointment of a guardian and in terminating the guardianship, there was no need or requirement that in addition thereto the Probate Court make a determination as to the father's sanity or insanity. The guardianship was properly instituted and terminated without the necessity for such a determination. However, if the order terminating the guardianship was indeed intended to be such a determination, then, by reason of the authorities above cited, this court rules such finding is not binding upon this court.

This court therefore holds that it is not foreclosed or forbidden from determining the question of the father's sanity or competency by reason of the proceedings in the Probate Court, nor is the consideration of that issue by this court a collateral attack upon the judgment of any other court of competent jurisdiction.

This court holds that the effect of the termination of the guardianship was only to turn back to the father that property which was entrusted to the son as guardian,

but whether or not the father was then or is now sufficiently competent to convey property which is within the physical and legal jurisdiction of this court is an issue which can and must be determined by this court.

In proceeding further with a determination of the issue before this court, it may be noted that there is a presumption of the father's continued insanity until overcome or otherwise determined by this court upon proper showing first made, and that in making such determination this court may consider the record and findings of the Probate Court and the orders made in that court as revealed by the record, and, together with all the other evidence in the case, give it such weight as this court finds proper. See *Wheeler* v. *State*, 34 Ohio St. 394.

"The presumption of continuance of insanity is one of fact and so far as it reflects on the question of present sanity of the individual may be rebutted and overcome by the evidence, when sufficient evidence has been introduced to meet, extinguish, rebut, countervail or overcome it." 29 Ohio Jurisprudence 2d 594.

"It is well established that, in the absence of a statute to the contrary, an adjudication of incompetency or insanity is competent evidence of the mental condition of the subject of such adjudication at the time thereof *or at the time of a transaction subsequent thereto*." *Ibid*, page 600.

"That one was confined in an asylum is confessedly competent evidence in support of a claim that he was insane at a later time." *Ibid*, page 597.

"If it is proved that at a given time one was mentally incapacitated the presumption arises that he continues to be so thereafter and this must be rebutted or counterbalanced by competent proof. The presumption of a continuance of insanity is a rebuttable one and removed on sufficient evidence." *Lee* v. *Stephens*, 38 Ohio Law Abs. 431, headnote 3.

Does the record in this case disclose that the father was restored to reason on the date the deed was executed and delivered by him to his son, and did he have the mental

capacity required to make a valid conveyance divesting him of his property?

A careful examination of the record compels a negative answer.

*It is stipulated that* in the proceedings in the Probate Court of August 15, 1967, which resulted in the termination of the guardianship, *testimony* touching upon the alleged competency of the father *was given by a Dr. Jarem*, a psychiatrist in the employ of the Lima State Hospital, *and by the father himself*. The stipulation does not disclose the nature of the testimony, but is described in the memorandum of the trustee filed in this case, and he states that Dr. Jarem, in touching upon the father's mental condition, was asked only whether the father could understand questions that would be presented to him, to which the doctor replied that the father could understand questions and answer them logically and coherently. There is no indication that any further examination of the witness was had relative to the nature of the questions that the father would be called upon to answer, nor is there any indication that the doctor was examined relative to any particular level of understanding of the questions that would be propounded to the father, and the examination as revealed in the memorandum indicates that they did not significantly touch upon the level of the father's mental capacity which would indicate his restoration to reason.

The other testimony before the Probate Court was by the father himself who, again according to the memorandum of the trustee, was asked if he knew the reason for terminating the guardianship, to which he answered, "Well, because *he* wants it that way," which presumably refers to his son's wishes. He was apparently also asked at the same time whether he would be willing to execute certain papers transferring title to the real estate, to which he replied that he was, although there is no indication whether he was asked if he understood the implications or consequences of such an act.

However, *disregarding and giving no weight to what*

*appears in the memorandum concerning which no stipulations were entered into,* any question about the testimony of Dr. Jarem at that hearing, upon which the son relies in support of his contention that his father was restored to reason and therefore properly made a deed transferring his property, is resolved by consideration of an affidavit filed in this case by the same Dr. Jarem in support of the trustee's motion for summary judgment.

In that affidavit he identifies himself as the assistant superintendent of Lima State Hospital and as the treating psychiatrist for the father for a period of three years, and states his considered professional opinion that the father *is not now* (that is, on November 6, 1968, the date of his affidavit), *nor was he on September 12, 1967* (the date on which the deed was allegedly executed), *possessed of sufficient mental capacity to execute a deed.* He further avers that *the father does not now, nor did he have on September 12, 1967, sufficient intellect to understand in a general way the nature, effect, and immediate consequences of a transaction the result of which could divest him of his interest in real estate.* He gives it as his further professional opinion that *the father does not now have, and did not have on September 12, 1967, sufficient intellect to consent to a transaction involving the deeding away of any of his real estate.*

Thus, upon a consideration of the entire record, this court can not find a single fact or a bit of evidence that would support a holding that the father was either mentally competent or that he had been restored to sanity at any date since his confinement in Lima State Hospital.

Finally, it becomes relevant to recall the specific issue which this court was required to rule upon in committing him to the Lima State Hospital in 1960.

"The only question for determination under these provisions is whether the relator is of sufficient soundness of mind to understand and appreciate the nature of the charge against him, *to comprehend his situation,* and whether he is mentally capable of furnishing his counsel the facts essential to the presentation of a proper defense."

*State, ex rel. Townsend,* v. *Bushong, Supt.,* 146 Ohio St. 271, 274.

This court, in committing the father to Lima State Hospital on February 16, 1960, found the father lacking sufficient soundness of mind to understand and appreciate the nature of the charge against him. It found *that he did not comprehend his situation,* and further found that he was not mentally capable of furnishing his counsel the facts essential to the presentation of a proper defense

Under these circumstances, did he have the mental capacity on September 12, 1967, to make a deed and convey his property to his son?

What mental competence is required to make a deed? The answer may be found in the following:

"Generally speaking, to be legally competent to make a deed * * * one must be, at the time of execution and delivery thereof a sane person, of sound mind, and possessed of memory, will and understanding. * * * The test as to mental capacity is * * * whether the powers of his mind have been so affected as to destroy his ability to understand the nature of the act in which he is engaged, its scope and effect, or its nature and consequence." 29 Ohio Jurisprudence 2d 569.

"The reason why soundness of mind is necessary in law to enable a man to contract or convey is because consent is of the essence of the contract or conveyance, and there can be no consent without understanding." 17 Ohio Jurisprudence 2d 139.

"The line is generally drawn between contracts made before an adjudication of insanity and contracts made thereafter, the general rule, which has been applied in Ohio, being that those made after an adjudication of insanity are absolutely void." 29 Ohio Jurisprudence 2d 564.

"Syllabus 4. A deed will be declared void, where the evidence discloses that grantor lacked mental capacity to transact business or make deed." *Monroe* v. *Shrivers,* 29 Ohio App. 109.

"The rule in Ohio is that a contract or conveyance

made by a person who has been adjudicated insane is void."
29 Ohio Jurisprudence 2d 603.

Upon consideration of all the evidence, including the fact that the father was an inmate of Lima State Hospital at all times involved in these proceedings, and including all other facts contained in the record, and applying the tests of mental competency and capacity as above set forth, this court reaches the conclusion that the father was, and still is, a person who does not comprehend his situation, and lacks the mental competency or capacity to understand or comprehend the nature of his acts now under consideration, including the significance and consequences of the conveyance of his property to his son.

The court finds, therefore, that the deed of September 12, 1967, is void, and did not effect a valid transfer of his father's property to the son.

It should be remembered that under the humane provisions of our law a person while insane can not be tried, sentenced, or executed, and the courts are duty bound to protect and to make certain that all of his rights are observed and preserved while he is under such disability.

The court must be equally zealous to see that his rights in and to his property, as well as the security of his person, are similarly preserved while he is committed by this court to an institution awaiting a restoration of his sanity.

The court therefore finds that the moneys resulting from the appropriation belong to and are still the property of the father. The motion filed by the son seeking an order to distribute these moneys to him and to his wife is accordingly overruled.

The court further finds that there is no genuine issue as to any fact touching upon the matters before it and that reasonable minds can come to but one conclusion, and that is adverse to the motion of the son and that the father is entitled to judgment in his favor as a matter of law, and the motion for summary judgment is therefore granted.

This court therefore directs that the moneys now on deposit remain on deposit, to be held until such time as this

court shall find that the father has been restored to reason or possesses the required mental capacity to make a conveyance, or until such time as the father or his estate may cause a transfer of such moneys to be made according to law.

In view of this ruling, it is not necessary for this court to pass upon a further issue raised, that is, that the father did not sign the deed in Clark County on September 12, 1967, as would appear from the face of the deed and the acknowledgment thereon. An affidavit filed and made part of the record indicated that on said date the father was in Lima State Hospital and received no visitors. The trustee for the father urges that this too would render the deed invalid, but in light of the court's decision with respect to the other issues in this case, no ruling on this issue is now made.

*Judgment accordingly.*